## Thomas Kingsbury, Administrator, *versus* John Baker 2d, Sheriff of Norfolk.

The personal property of a debtor having been attached on several writs, two credi-
tors, whose attachments were the first in order of time, and whose demands exceeded
in amount the value of this property, signed, together with the debtor, a written
memorandum, " requesting and consenting that the attaching officer should sell at
public vendue the property attached on their writs, as soon as convenient, and hold
the proceeds for the purpose of satisfying the judgments that might be recovered in
said suits, by priority of attachment." The officer sold the property accordingly.
The debtor died soon after the sale, and subsequently the two creditors took judg-
ments in their suits. It was *held*, that the memorandum was not an assignment of
the property or its proceeds to the two creditors, but that the doings of the officer
under it were official acts, pursuant to *St.* 1822, *c.* 93, that the proceeds were held
by him under the attachment, that the attachment was dissolved by the death of
the debtor, and that his administrator was thereupon entitled to recover of the
officer the amount of the proceeds.

Assumpsit for money had and received. The parties
stated a case.

Prior to March 31, 1835, the defendant, as sheriff, attached
the personal property of Tyler Pettee, the plaintiff's intestate,
on several writs, and on that day T. Metcalf and H. G.
Ware, the first and second attaching creditors, together with
Pettee, signed the following memorandum. " Needham,
March 31, 1835. We, the subscribers, request and consent
that John Baker 2d, sheriff of the county of Norfolk, shall
sell or cause to be sold, at public vendue, all the personal
property of Tyler Pettee in Needham, which he has attached
on our writs, as soon as convenient, and hold the proceeds of
the same for the purpose of satisfying the judgments that may
be recovered in said suits, by priority of attachment."

The defendant, on April 10, 1835, sold by public auction
the property mentioned in the memorandum, and the net pro-
ceeds amounted to $453·68, which sum is now in the hands
of the defendant.

Pettee died on April 11, 1835, and his estate has been rep-
resented insolvent, and commissioners have been appointed to
receive and examine the claims of his creditors.

Ware recovered judgment in his suit against Pettee, in the
Common Pleas in Suffolk, for $867·98. The judgment was

Kingsbury
v.
Baker.

entered on the 14th of April 1835, as of the first day of the term, being the 7th of April, by consent of Pettee, given in writing on the 10th, that it might be entered against him on any day of the term.   Metcalf recovered judgment for $81·95, against Kingsbury as administrator of Pettee, at September term, 1835, of the Common Pleas in Norfolk.

Kingsbury, as administrator of the estate of Pettee, demanded of Baker the abovementioned sum of $463·68, before the commencement of this action.

It was agreed that judgment in this action should be entered upon nonsuit or default, as the Court should direct upon the foregoing facts.

*Oct. 27th.*   *Leland*, for the plaintiff, cited *St.* 1822, c. 93, § 1, 5, 6 [Revised Stat. c. 90, § 57, 71, 105, 106.]

*Metcalf*, for the defendant, admitted that the attachment had been dissolved, but he argued that the creditors, Metcalf and Ware, did not claim under the attachment ; that the memorandum in writing was an assignment to them of the proceeds of the property ; that the parties might in like manner have agreed that the property should be applied to pay a third person's debt, and such agreement would have been a legal and valid assignment ; that the form of the assignment to these two creditors was unobjectionable ; *Adams* v. *Robinson*, 1 Pick. 461 ; *Canfield* v. *Monger*, 12 Johns. R. 346 ; *Dunn* v. *Snell*, 15 Mass. R. 481 ; and that the assignees had pursued a proper course, in taking judgment ; *Blossom* v. *Goodwin*, 1 Mass. R. 502 ; *Hunt* v. *Whitney*, 4 Mass. R. 624 ; *Moore* v. *Eames*, 15 Mass. R. 312.

SHAW C. J. afterwards drew up the opinion of the Court. If this property was sold by the sheriff and the proceeds held under the provisions of the statute, it is not denied that the attachment was dissolved.   *St.* 1822, c. 93.  The provision s explicit, § 6, that whenever any personal property shall be attached and the party defendant shall die before the same shall have been actually taken in execution, and letters testamentary or letters of administration on the estate of the defendant shall be granted within this Commonwealth, such attachment shall be deemed to be dissolved, and the property be delivered up to the executor or administrator, to be admin ·

istered in due course of law.   The policy of the law is obvious.   On the death of the defendant, the priority given by attachment to one creditor shall cease, and as the whole estate is then to be settled, the property shall go to the administrator for that purpose.   If the property is sufficient to pay all his debts, such preference is unnecessary ; if not sufficient, it would be inequitable.

But the question is, and in fact it is the only question, whether the money was held by the officer, under the attachment, at the time of the death of the debtor ; and the Court are of opinion that it was.   The statute provides, § 1, that any personal property attached may be sold by consent of the parties in writing ; § 2, that certain property may be appraised and sold, or delivered on bond, if the parties shall not consent 'n writing to a sale thereof.   It is made the duty of the officer to hold the proceeds, subject to the attachment ; they are liable to be further attached ; they are to be applied to the satisfaction of executions, if any are obtained, according to the priority of attachments, and the money not thus applied is to be restored to the defendant.   The main object of the statute is, to convert the goods into money, and to place the money in the same condition in regard to existing and after attachments, as the goods themselves stood in.   The memorandum of agreement stated in this case, conforms precisely to the first of the statute provisions.   It is a consent in writing, that the attached property should be sold and the proceeds held by the officer and applied to satisfy the judgments, according to priority of attachment.   Under this consent we think that the officer acted officially, that the money stood held by the attachment, by force of the statute, and that upon the dis solution of the attachment, the plaintiff, as administrator, was entitled to the money, to be administered according to law. Had the parties intended, as the argument for the plaintiffs insists that they did, to make a special assignment, to withdraw the attachment *de facto*, and to constitute the officer a special assignee and trustee to sell the property and distribute the proceeds to the plaintiffs, it would have assumed a very different shape.   Here are no words of assignment or transfer, no trust conferred on or assumed by the officer, other than the

Kingsbury
v.
Baker.
statute authority and trust, held by virtue of his office, and the attachment made upon the property ; his acts under this agreement were official acts.   Had the parties contemplated an assignment *in pais* to operate by force of the agreement, and not by the statute, there was no need of a judgment; the demands were not contested, and the debtor might have authorized the officer, as such assignee and trustee, to pay the amount forthwith, without waiting for judgments.

*Defendant defaulted.*